**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 11-cv-00042-CMA-KLM

DEAN L. JACOBS; and
MARCIELLE S. JACOBS,

      Plaintiffs,

v.

CREDIT SUISSE FIRST BOSTON;
OCWEN LOAN SERVICING, LLC;
CENTRAL LOAN ADMINISTRATION & REPORTING (CENLAR);
TAYLOR, BEAN & WHITTAKER MORTGAGE, INC.;
WELLS FARGO BANK, N.A.;
BANK OF AMERICA, N.A.;
COUNTRYWIDE HOME LOANS;
CHERRY CREEK MORTGAGE, INC.;
S. DINO PERRONE;
SUSAN CARTER;
CLARION MORTGAGE CAPITAL, individually and severally;
VADEN LAW FIRM, LLC;
THE STATE OF COLORADO; and
JOHN W. HICKENLOOPER, in his official capacity as
Governor of the State of Colorado,

      Defendants.

---

## ORDER GRANTING MOTIONS TO DISMISS

---

This matter is before the Court pursuant to Defendant Wells Fargo Bank, N.A.'s

("Wells Fargo") Motion to Dismiss (Doc. # 43),[1] and the Plaintiffs' response (Doc. # 42)[2];

---

[1] Wells Fargo filed a similar motion (Doc. # 29) directed at the original Complaint. The Plaintiffs' filing of an Amended Complaint and Wells Fargo's filing of a motion to dismiss against that amended pleading renders Wells Fargo's initial motion moot.

[2] The Plaintiffs filed no response to Wells Fargo's motion challenging the sufficiency of the Amended Complaint. The Court assumes that the Plaintiffs have elected to stand on the arguments in their response to Wells Fargo's motion challenging the initial Complaint.

Defendant Clarion Mortgage Capital's ("Clarion") Motion to Dismiss (Doc. # 46) and the

Plaintiffs' response (Doc. # 57); Defendants Credit Suisse First Boston ("Credit Suisse"),

Owcen Loan Servicing, LLC ("Ocwen"), and Vaden Law Firm, LLC's ("Vaden") Motion to

Dismiss (Doc. # 47), and the Plaintiffs' response (Doc. # 58); Defendants Cherry Creek

Mortgage Co. ("Cherry Creek") and S. Dino Perrone's Motion to Dismiss (Doc. # 48),

the Plaintiffs' response (Doc. #  61), and Cherry Creek and Mr. Perrone's reply (Doc.

# 65); Defendants Bank of America, N.A. ("BOA") and Countrywide Home Loans'

("Countrywide") Motion to Dismiss (Doc. # 49), the Plaintiffs' response (Doc. # 62), and

BOA and Countrywide's reply (Doc. # 63); and Cherry Creek and Mr. Perrone's Motion

for Sanctions (Doc. # 66), the Plaintiffs' response (Doc. # 68), and Cherry Creek and

Mr. Perrone's reply (Doc. # 80).  This matter is also before the Court on Mr. John R.

Prater's Motion to Withdraw as Counsel of Record for Plaintiffs (Doc. # 87) and

Defendants' response (Doc. # 88).

    In summary, the Plaintiffs are borrowers on a series of mortgage loans and raise

a variety of claims arising out of alleged misdeeds by the various Defendants in

connection with the servicing and enforcement of those loans.  Given the relative

disparity in the level of detail in the allegations against the various moving Defendants,

the Court will forego its customary practice of reciting a consolidated factual back-

ground and instead, proceed to analyze the merits of each moving Defendant's motion

separately, incorporating separate factual recitations as appropriate.

    Each of the Defendants moves for dismissal of the claims against them pursuant

to Fed. R. Civ. P. 12(b)(6).  In reviewing a motion to dismiss pursuant to Rule 12(b)(6),

the Court must accept all well-pled allegations in the Amended Complaint as true and

view those allegations in the light most favorable to the nonmoving party – the Plaintiffs.

*Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).  The Court must limit its consideration to the four corners of the Amended Complaint, any documents attached thereto, and any external documents that are referenced in the Amended Complaint and whose accuracy is not in dispute. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

In *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court clarified what constitutes a "well-pleaded fact" for purposes of a Rule 12 analysis.  A pleader is not required to set forth "detailed factual allegations," but must offer more than "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement."  *Iqbal*, 129 S.Ct. at 1949.  The cases make clear that it is **facts**, not conclusions, that must be pled; "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," including "legal conclusion[s] couched as a factual allegation."  *Id.* at 1949-50.

## A.    WELLS FARGO'S MOTION (DOC. # 43)

The Amended Complaint is exceedingly sparse with regard to specific allegations against Wells Fargo.  Indeed, only a single specific factual averment mentions Wells Fargo, indicating that a June 2006 refinancing of existing debt by the Jacobs resulted in a payoff of a home equity line of credit that Wells Fargo had previously extended to the

Jacobs.[3]  Every other reference to Wells Fargo in the Amended Complaint occurs collectively, with Wells Fargo being listed among numerous other Defendants in largely conclusory assertions of misconduct, divorced from any specific factual allegations describing Wells Fargo's own conduct.  (*See e.g.* Doc. # 40, ¶ 50 (Wells Fargo, among 17 other Defendants, "engaged in a regular pattern of violations of . . . the Real Estate Settlement Procedures Act ["RESPA"] with respect to responding to requests for borrowers. . ."); ¶ 57 ("As a proximate result of the fraudulent, negligent or reckless conduct of" Wells Fargo, among 18 others, "the Plaintiffs credit has been impaired . . . ."); ¶ 61 (Wells Fargo, among 17 others, "have caused to be recorded various documents including a Notice of Sale which has impaired the Plaintiffs' title. . .").

Simply put, there are no well-pled facts in the Amended Complaint that would give rise to any cognizable claim against Wells Fargo.  With the exception of the single specific allegation noted above, every reference to Wells Fargo in the Amended Complaint is precisely the sort of "formulaic recitation of the elements of a cause of action," or "legal conclusion couched as a factual allegation" that *Twombly* and *Iqbal* prohibit.  The Amended Complaint gives no hint whatsoever as to what particular conduct by Wells Fargo constituted the alleged violation of RESPA, which particular act by Wells Fargo caused the Jacobs' credit to be impaired, what documents filed by Wells Fargo allegedly impaired the Jacobs' title, etc.  The failure of the Amended Complaint to contain any well-pled allegations against Wells Fargo borders on being sanctionable as frivolous; at a minimum, it warrants dismissal of the claims against Wells Fargo under Fed. R. Civ. P. 12(b)(6).  Accordingly, Wells Fargo's Motion is

---

[3] One other allegation mentions Wells Fargo as one of the links in a chain of assignments of the Jacobs' initial loan, but does not identify any particular conduct by Wells Fargo.

4

granted in its entirety and all claims against Wells Fargo are dismissed without prejudice.

**B.      BOA AND COUNTRYWIDE'S MOTION (DOC. # 49)**

The Jacobs' claims against BOA and Countrywide are similarly frivolous.  Other than situations in which BOA is reflexively included in groups of Defendants that are the subject of conclusory allegations like those described above, BOA is otherwise mentioned in the Amended Complaint only in two paragraphs purporting to identify the parties.  Paragraphs 6 and 7 purport to identify BOA and Countrywide, but are primarily devoted to lengthy and inflammatory diatribes against these Defendants for conduct that is not necessarily alleged to have occurred in this action.  At best, the only well-pled facts in paragraphs 6 and 7 of the Amended Complaint with regard to BOA are the facts that: (i) "[BOA] is an alleged assignee on Plaintiffs' mortgage"; and (ii) that "Countrywide allegedly assigned the right to service the [Plaintiffs'] mortgage loan to [BOA]" and that the Plaintiffs dispute the effectiveness of that assignment in some unspecified way. With one supplementation, the same can be said about the Amended Complaint's allegations against Countrywide.  The only additional instance in which a specific action involving Countrywide is referenced in the Amended Complaint is the observation that the June 2006 refinance also resulted in a Countrywide loan being paid off in addition to the Wells Fargo loan.

For the reasons stated with regard to Wells Fargo's motion, the Court finds that the Amended Complaint utterly fails to allege any particular conduct by BOA or Countrywide that would give rise to any cognizable claim for relief.  Accordingly, BOA and Countrywide's Motion to Dismiss is granted, and all claims against them are dismissed without prejudice.

## C.      CLARION'S MOTION (DOC. # 46)

The Amended Complaint is only slightly more forthcoming regarding the actions allegedly committed by Clarion.  The Amended Complaint first mentions Clarion as being involved in "a long pattern of deceptive and predatory lending practices" consisting of "contacting Plaintiffs by telephone and fraudulently inducing Plaintiffs to refinance their home . . in bogus no cost refinancing schemes."  Although the Jacobs allege a "pattern" of such refinancings, the Amended Complaint specifically describes only one – an instance in June 2006 in which the Jacobs were "fraudulently induced to refinance by . . . Clarion" into a new loan "despite the fact that their income did not support" the monthly payment required by the new loan.  Notably, the Amended Complaint does not identify with particularity any of the allegedly "fraudulent" statements that Clarion used to "induce" the Plaintiffs into the June 2006 refinancing, as required by Fed. R. Civ. P. 9(b).  *See e.g. Jensen v. America's Wholesale Lender*, 425 F. App'x 761, 763-64 (10th Cir. 2011) (allegations that mortgage lenders made "false and misleading statements" to borrower was insufficient to plead fraud with particularity as required by Rule 9(b)) (citing *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726–27 (10th Cir. 2006) (to satisfy Rule 9(b)'s particularity requirement, pleader of fraudulent statement must identify "the time, place, and contents of the false representation, the identity of the party making the false statements, and the consequences thereof")).  In all other respects, the Amended Complaint mentions Clarion only as one of several defendants accused in conclusory allegations of "transmitt[ing] false and adverse credit information about the Plaintiffs," "[making] numerous material misrepresentations to Plaintiffs," "defraud[ing] Plaintiffs," and so on.

6

Disregarding the Jacobs' conclusory and insufficiently pled allegations of "fraudulent inducement," the Court is left only with a single well-pled allegation that in 2006, Clarion encouraged the Jacobs to take out a refinance loan "that their income did not support." Assuming that fact to be true, the Court turns to the question of whether that fact is sufficient to support any of the claims the Jacobs assert against Clarion.

The Jacobs' Claim 1 sounds in breach of contract. Because the Jacobs have not alleged that Clarion was a contracting party to the 2006 refinance – the Amended Complaint alleges that the lender was Taylor, Bean & Whittaker Mortgage Inc. ("Taylor") – the allegation that Clarion encouraged the Jacobs to enter into a refinance they could not afford does not state a claim for breach of contract.

The Jacobs' Claim 2 alleges "predatory lending . . . in violation of" unspecified "Federal and State laws." This Court is not aware of, and the Jacobs' response to Clarion's motion does not reveal, any particular statutory or common-law source of a claim for "predatory lending," and thus, the Jacobs have failed to state a cognizable claim of this type. To the extent the clam is construed to be one for simple fraud, the Jacobs have failed to plead the essential components of any such fraud with the requisite particularity.

The Jacobs' Claim 3 alleges "wrongful foreclosure." Given that the only well-pled factual allegation against Clarion makes no mention whatsoever of Clarion foreclosing on the Jacobs, they have failed to state a wrongful foreclosure claim against Clarion. Moreover, the Court notes that Colorado does not recognize a claim based on "wrongful foreclosure." *Schwartz v. Bank of America, N.A.*, No. 10–cv–01225, 2011 WL 1135001, at * 4 (D. Colo. Mar. 28, 2011) (unpublished); *Commercial Equity Corp. v. Majestic Sav. & Loan Ass'n*, 620 P.2d 56, 58 (Colo. App. 1980) (refusing to recognize wrongful

foreclosure as a viable claim).  Even if a cognizable claim for "wrongful foreclosure"

existed, this Court lacks jurisdiction to interfere with the state court's foreclosure-related

judgments.  Any allegations concerning the propriety of the foreclosure proceedings are

more appropriately pursued in an independent action in state court.  (*See Beeler Props.*

*LLC v. Lowe Enters. Residential Investors, LLC*, No. 07-cv-00149, 2007 WL 1346591,

at *3 (D. Colo. May 7, 2007) (unpublished)).

The Jacobs' Claim 4 alleges slander of title.  In order to state an actionable claim

for slander of title, Plaintiffs must allege: (1) slanderous words, (2) falsity, (3) malice,

and (4) special damages.  *Fountain v. Mojo*, 687 P.2d 496, 500 (Colo. App. 1984).

"Special damages involve some effect on the **owner's** ability to sell the property.  At a

minimum, the property must be on the market for sale, and the tort must create a cloud

upon the title; then the expense of legal proceedings to remove the cloud on title

satisfies the damages requirement.  Attorney fees and costs in removing the cloud on

title also constitute special damages in a slander of title action."  *Skyland Metro. Dist. v.*

*Mountain West Enter., LLC*, 184 P.3d 106, 131 (Colo. App. 2007) (internal citations and

quotations omitted) (emphasis added).  Once again, the only well-pled fact alleged

against Clarion makes no mention of Clarion "recording various documents" slandering

the Jacobs' title.

The Jacobs' Claim 5 alleges a violation of the Colorado Consumer Protection Act

("CCPA"), C.R.S. § 6-1-101, *et seq.*   To state an actionable CCPA claim, Plaintiff must

allege that: (1) the defendant engaged in an unfair or deceptive trade practice; (2) the

challenged practice occurred in the course of defendant's business, vocation, or

occupation; (3) it significantly impacts the public as actual or potential consumers of

the defendant's goods, services, or property; (4) the plaintiff suffered injury in fact to a

legally protected interest; and (5) the challenged practice caused the plaintiff's injury. *Ivar v. Elk River Partners, LLC*, 705 F. Supp. 2d 1220, 1241 (D. Colo. 2010). If one element of a CCPA claim is not met, the entire claim fails. *See Mayhew v. Cherry Creek Mortgage Co.*, No. 09-cv-00219, at 2009 U.S. Dist. LEXIS 125725, at *33 (D. Colo. Dec. 21, 2009) (unpublished). Additionally, a CCPA claim must be pled with particularity pursuant to Fed. R. Civ. P. 9(b). *Duran v. Clover Club Foods Co.*, 616 F. Supp. 790, 793 (D. Colo. 1985). Because the Jacobs' unadorned allegations lack the requisite particularity, the Jacobs have failed to state a cognizable CCPA claim against Clarion.

The Jacobs' Claim 6 alleges "slander of credit." As with the claim for "predatory lending," the Jacobs do not identify any statutory or common-law source for such a claim. Accordingly, the Court finds that no cognizable claim of this sort is alleged against Clarion.

The Jacobs' Claim 7 alleges intentional infliction of emotional distress against Clarion, presumably under Colorado law. To state such a claim, the Jacobs must allege facts showing that Clarion engaged in extreme and outrageous conduct, that it did so recklessly or with the intention of causing them to suffer emotional distress, and that the conduct did indeed cause them to suffer such distress. *Llewellyn v. Shearson Fin. Network, Inc.*, 622 F. Supp. 2d 1062, 1068 (D. Colo. 2009). To be actionable, the conduct must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society." *Id.* The mere allegation that Clarion encouraged the Jacobs to take out a loan that was not suited to their financial condition does not, as a matter of law, rise to this level.

The Jacobs' Claim 8 alleges violations of a laundry-list of subsections of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*  In order to assert an actionable FDCPA claim, Plaintiffs must allege a claim against debt collectors.  *See* 15 U.S.C. § 1692(e) ("the purpose of this subchapter is to eliminate the abusive debt collection practices by debt collectors").  After wading through the Jacobs' dense, long-winded, and vague allegations, the Court finds that the Jacobs' have failed to allege facts concerning Clarion's conduct as a debt collector.

The Jacobs' Claim 9 alleges a violation of RESPA.  In pertinent part, RESPA requires that "[e]ach person who makes a federally related mortgage loan shall disclose to each person who applies for the loan, at the time of application for the loan, whether the servicing of the loan may be assigned, sold or transferred to any other person at any time while the loan is outstanding."  12 U.S.C. § 2605(a).  Additionally, at the time of any such transfer, "[e]ach servicer of a federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the loan to any other person." 12 U.S.C. § 2605(b)(1).  Services of federally related mortgage loans are obligated to respond to inquiries from borrowers regarding the servicing of their loans, and such responses must adhere to certain statutory requirements with respect to timing and content.  *See* 12 U.S.C. § 2605(c).  Under 12 U.S.C. § 2609, RESPA sets forth certain collection and notification requirements regarding mortgage-related escrow accounts established for the purpose of assuring payment of taxes, insurance premiums, or other charges with respect to the property.

The mere fact that Clarion encouraged the Jacobs to take out an unsuitable loan does not constitute a violation RESPA.  Beyond citing to the various sections of the RESPA, the Jacobs fail to assert any plausible facts in support of the RESPA claim.

The Jacobs do not appear to name Clarion as a Defendant in Claims 9 and 10. Claim 11 alleges generally "unfair and/or deceptive acts and practices," and specifically alleges that Clarion "received a kickback" for "charging Plaintiffs for unnecessary force placed insurance."  No well-pled allegation in the Amended Complaint gives any indication of how Clarion charged the Jacobs for such insurance or explains how Clarion "received a kickback" for doing so.  This claim also asserts that Clarion is in violation of an unspecified state law "prohibit[ing] unfair and deceptive acts and practices," but does not identify what Colorado law is being invoked.  Under these circumstances, the Court finds that the Jacobs' Claim 11 fails to state a cognizable claim against Clarion.

Finally, the Jacobs assert an unnumbered "claim" contending that "the non-judicial foreclosure process in Colorado [is] unconstitutional."  This claim asserts that Clarion, among others, has "taken the untenable and unconstitutional position that Courts should overlook inadequate and incomplete documentation because due process considerations are immaterial."  Nothing in the Amended Complaint offers any specific factual averment that indicates what, if any, position Clarion took with regard to any foreclosure against the Jacobs, and thus, this assertion fails to state any cognizable claim against Clarion.

Accordingly, because the Amended Complaint fails to allege any cognizable claim against Clarion, Clarion's Motion to Dismiss (Doc. #46) is granted.

**D.     CHERRY CREEK AND MR. PERRONE'S MOTION TO DISMISS (DOC. # 48) AND MOTION FOR SANCTIONS (DOC. # 66)**

Cherry Creek is described in the Amended Complaint as a mortgage broker, for whom Mr. Perrone worked.  Like Clarion, Cherry Creek and Mr. Perrone are only

specifically mentioned as having "fraudulently induce[d]" the Jacobs to refinance their indebtedness into another loan that was "extremely unfavorable to Plaintiffs."

For all practical purposes, the allegations against Cherry Creek and Mr. Perrone are subject to the same analysis as the claims against Clarion above.  For the same reasons, Cherry Creek and Mr. Perrone's motion to dismiss is granted.

Cherry Creek and Mr. Perrone, along with former Defendant Widespread Lending Solutions, Inc. ("Widespread"),  have separately moved for sanctions against the Jacobs under Fed. R. Civ. P. 11(b).[4]  An attorney's signature on a filing constitutes a representation that the attorney has conducted a reasonable inquiry into legal and factual matters contained therein, that the filing is not being interposed for any improper purpose, that the claims therein are warranted by existing law, and that the factual representations therein are supported by evidence in existence or likely to be discovered.  Fed. R. Civ. P. 11(b)(1), (2); *Glenn v. First Nat'l Bank of Grand Junction*, 868 F.2d 368, 370 (10th Cir. 1989).

The Jacobs' Amended Complaint suffers from a variety of defects that, together, suffice to render its allegations against Cherry Creek and Mr. Perrone sanctionable. First, the Amended Complaint is a classic example of "shotgun pleading."  This type of pleading contains several counts or causes of action, each of which incorporates by reference the entirety of its predecessors.  *Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1296 (11th Cir. 2002).  As a result, each successive claim is supported by the accumulation of all of the preceding factual and legal averments, even though many – or even most – of those previous averments are

_____

[4]  The Jacobs' dismissed all of their claims against Widespread approximately one month after the motion for sanctions was filed.

irrelevant to the current claim. *Id.* Shotgun pleading is an attractive option for the pleader, who can simply recite an extended narrative at the beginning of the pleading, and proceed to state numerous claims by simply reciting the formulaic elements of the claim and referring holistically to the preceding narrative as support. But doing so places an inordinate burden on the party responding to that pleading, and on the Court interpreting it, requiring them to parse the narrative repeatedly and attempt to independently extract the particular factual averments that are relevant to each individual claim. Essentially, the shotgun pleader foists off one of the pleading lawyer's critical tasks – sifting a mountain of facts down to a handful of those that are relevant to a given claim – onto the reader. As a result, courts roundly decry shotgun pleading as a subject of "great dismay," "intolerable," and "in a very real sense . . . [an] obstruction of justice," *Id.* at 1295-96 n. 9, 10 *and cases cited therein*.

Secondly (and perhaps relatedly), the Jacobs' Amended Complaint also betrays the pleader's failure to rigorously analyze the claims insofar as many claims are reflexively asserted against large numbers of Defendants, even when there is no apparent reason for certain Defendants to be named in those claims. Typically, this defect occurs when the plaintiff sues a large number of defendants for a series of discrete events in which not every defendant participated in completely; nevertheless, the pleader lazily asserts claims against "the defendants" generally, without attempting to sort out the individual actors alleged to be liable for each individual action or discrete claim. *See*, *e.g.*, *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008) ("Given the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain" what particular acts they

are accused of doing);  *Meek v. Torossian*, No. Civ.-01-1459, 2002 WL 32026156 at *9

(W.D. Okla. Dec. 17, 2002) (unpublished) (describing such practice as "inherently

vexatious").  But the mere fact that the Jacobs listed the Defendants by name, rather

than grouping them under a single label, hardly mitigates the problem.  As noted above,

there are numerous claims in the Amended Complaint where a given Defendant is

named, but where nothing whatsoever in the factual recitation gives any suggestion that

the given Defendant actually participated in the conduct apparently underlying that

claim.  *See*, *e.g.*, Claim 4 (alleging that Cherry Creek and Mr. Perrone slandered the

Jacobs' title by "record[ing] various documents," but the Amended Complaint never

mentions Cherry Creek or Mr. Perrone recording <u>any</u> document against the Jacobs,

much less a document that is slanderous of their title).  In other filings, the Jacobs

appear to admit that they lack any demonstrable belief that a particular Defendant is

indeed liable to them, stating that they are "unsure who is the real party in interest" – *i.e.*

who actually owns their note and mortgage – and thus, they appear to operate under

the erroneous assumption that they may simply lob generalized assertions against

everyone involved in the transaction, and that it is each Defendants' burden "to prove

that they were the real party in interest at the initiation of the foreclosure action."  (Doc.

# 61 at 5).

Third, the Amended Complaint clearly discloses the Jacobs' counsel's

unfamiliarity with the requirements of fact pleading, as set forth in cases such as

*Twombly* and *Iqbal*.  Those cases unambiguously require pleaders to allege facts,

not conclusions, and clearly provide that a pleading that consists simply of formulaic

recitations of elements or conclusory assertions of liability fail to state a claim.

By definition, an attorney who "apparently does not know what is necessary to state

a claim" violates Rule 11 by filing an unsupported pleading.  *Glenn*, 868 F.2d at 370.

For the reasons discussed above, the Jacobs' Amended Complaint clearly runs afoul

of *Twombly* and *Iqbal*'s requirements.

Fourth, both the Amended Complaint and the Jacobs' responses to the

Defendants' motions indicate that the Jacobs have asserted "claims" for which there

is no recognized cause of action, or, at the very least, the Jacobs are unaware of the

applicable law that might govern such a claim.  Claim 2's assertion of "predatory

lending" insists that the Defendants' actions are "in violation of Federal and State laws,"

but neither the Amended Complaint nor the Jacobs' responses to the Defendants'

motions attempts to identify those "Federal and State laws" creating a cause of action

for "predatory lending," much less identify the elements of such a claim.  Claim 6

asserts "slander of credit," which again purports to be asserted "pursuant to state and

federal law," but for which the Jacobs have never cited the authority recognizing and

describing such a claim.  Claim 11 recites a variety of "deceptive acts and practices"

that many Defendants allegedly engaged in (without identifying which Defendants

allegedly engaged in which practices), and proceeds to explain that "each state . . .

where [the various Defendants] do business has a law that prohibits Unfair and

Deceptive Acts and Practices ('UDAP laws')," then goes on to assert that "the conduct

described in the previous paragraph of this complaint violates these UDAP laws."

Again, the Jacobs have never attempted to identify the "UDAP laws" they invoke,

and indeed, by all appearances, this generic invocation of some unknown state law

prohibiting deceptive practices would appear to be entirely duplicative of the Jacobs'

Claim 5, which specifically invokes Colorado's Consumer Protection Act, insofar as all

of the allegedly deceptive practices directed at the Jacobs appears to have occurred in Colorado.

Fifth, the Jacobs' Amended Complaint appears to primarily trade not on factual averments specific to the Jacobs, but rather, on generalized outrage directed at the Defendants for conduct occurring elsewhere and affecting others.  Paragraphs 2 - 7, which nominally purport to identify six of the Defendants, occupy eight full pages of the Amended Complaint.  Contained therein are entirely irrelevant and purposefully inflammatory references to criminal investigations of certain Defendants, the practice of certain Defendants to outsource work to foreign countries, bankruptcies involving certain Defendants, certain Defendants' receipt of taxpayer bailouts, and numerous assertions that various Defendants engaged in "nationwide scheme[s]" of unfair and fraudulent business practices, even though the Jacobs here do not purport to represent the interests of those harmed by the Defendants elsewhere.  It is apparent to the Court that the pleader's purpose is not simply to vindicate the Jacobs' own particular rights, but to use the judicial system as a soapbox to vent more broadly about wrongs by the Defendants that have no direct connection to the Jacobs.

The analytical and pleading defects in the Amended Complaint are thrown into sharp relief by the Jacobs' response to the motion for sanctions.  Contrary to the Amended Complaint's terseness and baffling lack of detail as to how Cherry Creek and Mr. Perrone are connected to the claims being asserted, the response to the motion for sanctions lays out a somewhat detailed, factually-plausible[5] explanation for the Jacobs'

---

[5]  The Court does not suggest that it finds any merit in the logic laid out by the Jacobs with regard to the possibility of Cherry Creek's liability.  Rather, the Court simply observes that, taken at face value, the circumstances described by the Jacobs might, at least arguably, permit the inferences the Jacobs have drawn.

decision to name Cherry Creek in many of the claims.  (The decision to name

Mr. Perrone in most of those claims largely remains a mystery.)  The Jacobs explain

that they "have not been able to determine who owns their note and or mortgage," and

posit that, because they have not uncovered any evidence that Cherry Creek assigned

the note and mortgage to another entity, the note and mortgage may still be owned by

Cherry Creek, not any of the other Defendants.  If Cherry Creek is indeed the true

owner of the note, arguably, some of the conduct alleged to be improper here may be

conduct for which Cherry Creek bears legal liability.  But the fact remains that the

Amended Complaint makes no mention whatsoever of the Jacobs' investigation into

Cherry Creek's status, nor the facts that led the Jacobs to the conclusion that Cherry

Creek may still be the owner of their note and mortgage.[6]  The Amended Complaint is

so bereft of colorable claims against Cherry Creek and Mr. Perrone, and so riddled with

indicia of an ulterior motive against other Defendants, that the Court can only conclude

that it was interposed for the improper purposes of harassment and vexation against

Cherry Creek and Mr. Perrone (among others).  Moreover, the failure of the Amended

Complaint to state a cognizable claim against Cherry Creek and Mr. Perrone is so

obvious that no reasonable attorney could have believed that the claims contained

within it against Cherry Creek and Mr. Perrone were warranted by existing law.

Accordingly, Cherry Creek and Mr. Perrone's motion for sanctions is granted.

By definition, the sanction to be imposed under Rule 11 is one that is imposed on the

---

[6] Indeed, the Amended Complaint states, without qualification, that "Plaintiffs' loan was sold . . . no less than eleven times." *Docket* # 40, ¶ 19.  The only hint in the Amended Complaint that the Jacobs might question whether the loan was actually legally transferred to another entity comes in a curiously-worded tautological speculation that "**if** any of the purported assignments . . . were done improperly then [the Defendant currently claiming ownership of the note and mortgage] . . . lacked standing to bring the foreclosure action." *Id.* (emphasis added).

attorney signing the defective filing, not on the client who may be entirely unaware of the frivolousness of that attorney's conduct. Fed. R. Civ. P. 11(c)(1). For the reasons set forth above, this Court finds it proper that Mr. Prater, the Jacobs' counsel, be the target of the sanctions. The purpose of the sanction is to deter the repetition of the conduct, although where the sanction is imposed at the request of a party victimized by the conduct, such deterrence may be achieved in part or whole by requiring the sanctioned attorney to pay the reasonable attorney's fees and costs incurred by the victimized party. Fed. R. Civ. P. 11(c)(4).

The Court takes judicial notice of the fact that Mr. Prater has filed several actions in this District similar to this one, and that the pleadings in those cases are similar to the one at issue here in many respects.[7] At the time the Amended Complaint in this action was filed on February 2, 2011, motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) had been filed in each of the other cases, specifically asserting (among other things) that Mr. Prater's pleadings ran afoul of *Twombly* and *Iqbal*, and that Mr. Prater's filings failed to identify authority for "claims" such as "predatory lending" and "wrongful foreclosure." In such circumstances, this Court cannot conclude that the defects in the Amended Complaint here were the result of an isolated mistake or fleeting carelessness, but rather, the Court finds them to be the result of Mr. Prater's fundamental misunderstanding of the requirements of federal pleading. For this reason,

---

[7] *Andersson v. Bank of New York Mello*, D.C. Colo. Case no. 10-cv-2974-CMA; *Prater v. Bank of New York Mellon*, 10-cv-2995-WJM; *Boeke v. HSBC Mortgage Corp.*, 10-cv-3002-CMA.

The Court notes that it has not, nor does it intend to, subject those pleadings to the same depth of analysis that it has given to the Amended Complaint here. The Court bases its conclusion that the pleadings in these other cases are "similar" to the Jacobs' pleading here by virtue of the fact that all of the actions set forth precisely the same claims, in precisely the same order, and with nearly identical language. This Court has not attempted to determine whether the factual averments in those pleadings are as deficient as those presented in this case.

one component of the sanction, intended to deter Mr. Prater from such pleading in the future, will be a requirement that, within 6 months of this Order, Mr. Prater complete a Continuing Legal Education course devoted primarily to educating lawyers regarding proper pleading.  Mr. Prater shall certify his completion of this component of the sanction by affidavit, filed in this action.

In addition, the Court finds that effective deterrence also requires the payment of reasonable attorney's fees to Cherry Creek and Mr. Perrone.  As such, Defendants Cherry Creek and Mr. Perrone are permitted to file documentation in support of their reasonable attorney's fees.  In light of the award of sanctions, the Court reserves ruling on the Unopposed Motion to Withdraw as Counsel of Record (Doc. # 87).

**E.    DEFENDANTS CREDIT SUISSE, OCWEN, AND VADEN'S MOTION TO DISMISS (DOC. # 47)**

Defendants Credit Suisse, Ocwen, and Vaden also seek dismissal of the claims against them, namely: breach of contract, predatory lending, wrongful foreclosure, slander of title, violation of the Colorado Consumer Protection Act, slander of credit, infliction of emotional distress, violation of the FDCPA, violation of RESPA, violation of the Truth in Lending Act, unfair and deceptive acts and practices, and breach of reinstatement.

As with the Jacobs' claims against all the other Defendants, the Court finds that these claims are similarly lacking in any substance.  The Court has devoted abundant judicial resources to parsing out Plaintiffs' dense allegations and in noting the repeated deficiencies in Plaintiffs' sloppy pleading.  For the reasons already discussed *ad nauseam*, the Court finds that dismissal of Plaintiffs' claims against Defendants Credit Suisse, Ocwen, and Vaden is also warranted.

**CONCLUSION**

Accordingly, for the foregoing reasons, IT IS ORDERED THAT:

(1)     Defendant Wells Fargo Bank N.A.'s Motion to Dismiss All Claims

        (Doc. # 29) is DENIED AS MOOT;

(2)     Defendant Wells Fargo Bank N.A.'s Motion to Dismiss All Claims

        (Doc. # 43) is GRANTED and all claims against Wells Fargo are

        DISMISSED WITHOUT PREJUDICE;

(3)     Motion to Dismiss Plaintiffs' First Amended Complaint Filed by Defendants

        Bank of America, N.A. and Countrywide Home Loans, Inc. Pursuant to

        Fed. R. Civ. P. 12(b)(6) (Doc. # 49) is GRANTED and all claims against

        Bank of America and Countrywide are DISMISSED WITHOUT

        PREJUDICE;

(4)     Clarion Mortgage Capital, Inc.'s Motion to Dismiss Plaintiff's Amended

        Complaint (Doc. # 46) is GRANTED and all claims against Clarion are

        DISMISSED WITHOUT PREJUDICE;

(5)     Cherry Creek Mortgage Company, Widespread Lending Solutions, and

        S. Dino Perrone's Motion to Dismiss all Claims (Doc. # 48) is GRANTED

        and all claims against Cherry Creek, Widespread, and D. Perrone are

        DISMISSED WITHOUT PREJUDICE;

(6)     Cherry Creek Mortgage Company, Widespread Lending Solutions, and

        S. Dino Perrone's Motion for Sanctions (Doc. # 66) is GRANTED, and

        accordingly:

(a)     Mr. John R. Prater, counsel for Cherry Creek Mortgage Company,

Widespread Lending Solutions, and S. Dino Perrone, shall

complete, and certify completion of, a continuing legal education

course devoted primarily to the proper pleading standards, within

six months of this Order;

(b)     Mr. Prater shall personally reimburse Cherry Creek Mortgage

Company, Widespread Lending Solutions, and S. Dino Perrone

their reasonable attorney's fees incurred in connection with their

efforts to obtain dismissals of the claims lodged against them in an

amount to be determined by the Court; and

(c)     Cherry Creek Mortgage Company, Widespread Lending Solutions,

and S. Dino Perrone shall file documentation of the reasonable

attorney's fees incurred in connection with their efforts to obtain

dismissals of the claims lodged against them by no later than **close

of business on Friday, October 14, 2011**.  The submissions in

support of attorney's fees shall comport with the Court's local rules.

(7)     In light of the award of sanctions against Mr. Prater, the Court reserves

ruling on his Unopposed Motion to Withdraw as Counsel of Record (Doc.

# 87); and

(8)     Defendants Credit Suisse First Boston, Ocwen Loan Servicing, LLC's and

Vaden Law Firm, LLC's Motion to Dismiss and Request for Attorney Fees

(Doc. # 47) is GRANTED and all claims against Defendants Credit Suisse

First Boston, Ocwen Loan Servicing, LLC and Vaden Law Firm, LLC are

DISMISSED WITHOUT PREJUDICE.

DATED:  September   30  , 2011

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge